# W. S. LAND & CATTLE CO. et al. v. McBRIDGE,

## County Treasurer.

### (No. 2382.)

#### SYLLABUS BY THE COURT

(1) Section 13, c. 84, Laws 1913, which provided the time when the state board of equalization should hold its meet-

ing, and which gave it the power to increase or decrease the value of property for taxation purposes, constituted constructive notice to all concerned of any lawful or legal action which said board might take with respect to such matters.     P. 441

(2) The constructive notice thus provided did not extend nor apply to any illegal or unlawful action on the part of said board, such as increasing the value of property to a sum in excess of its actual value, or in so valuing it as to constitute a discrimination against its owner.     P. 441

(3) The mere fact that the district attorney arbitrarily refuses to hear a taxpayer, who complains of an overvaluation of his property, or the mere fact that the state board of equalization has increased the value of the property of such complaining taxpayer, does not entitle him to restrain, by injunction, the added tax created by virtue of such increase in value.     In either instance he must go beyond this, and affirmatively show that such state board of equalization has injured him, either by fixing the value of his property in excess of its actual value or that it has discriminated against him.     P. 441

(4) Overvaluation of property alone is not sufficient to warrant equitable relief, where the owner thereof had notice of such valuation, and was either heard or given an opportunity to be heard.     It is only in cases where overvaluation or discrimination occurs, and which rests upon constructive notice, that courts of equity will grant relief.     P. 441

Appeal from District Court, Colfax County; Lieb, Judge.

Suit by the W. S. Land & Cattle Company and others against Thomas McBridge, Treasurer of Colfax County, to restrain the collection of additional taxes. From an order dissolving a temporary writ of injunction, plaintiffs appeal. Affirmed.

Crampton, Phillips & Darden, of Raton, for appellants.

H. S. Bowman, Atty. Gen., and A. M. Edwards, Asst. Atty. Gen., for appellee.

### OPINION OF THE COURT

BRATTON J.     The appellants, the W. S. Land & Cattle Company and others, duly returned during the year 1913, in the manner and within the time prescribed by law, to the tax assessor of Colfax county, their respective lands, which aggregated ap-

proximately 175,000 acres. The board of county commissioners of that county fixed the actual value of grazing lands, for the purpose of taxation for that year, at $1.80 per acre, and the law then in force requiring such property to be assessed on the basis of one-third of its actual value, the lands in question were valued at 60 cents per acre. No appeal was taken from the assessments in question or the action of said board in so fixing the value of such lands.

Thereafter, and on July 26, 1913, during its regular meeting, the state board of equalization by an order duly and regularly entered in its effort to equalize values throughout the state, raised some properties and reduced others. It increased the value of grazing lands within Colfax county 30 per cent., which fact was duly certified to the tax assessor of said county, who extended the taxes upon all such property on the tax rolls accordingly. After the said rolls had been completed, in the form prescribed by law, and had been delivered to the treasurer of Colfax county for the collection of taxes, the appellants obtained their first actual notice of such increaset valuation. They paid all the taxes due according to their rendition and the valuation fixed by the assessor and the board of county commissioners, but instituted this suit to restrain, by injunction, the collection of the additional taxes caused by such increase in valuation by the state board of equalization. A temporary writ of injunction was granted, but was dissolved after final hearing.

In their complaint appellants fullly pleaded that their lands had been valued for taxation purposes by the state board of equalization, in its order which increased their value 30 per cent., to a sum in excess of their actual value; that they had been assessed higher than other lands of a like class; that grazing lands in Colfax county were valued higher than lands of the same class and kind in other counties of the

state; that immediately after they learned of such raise, which was subsequent to the completion of the tax rolls and their delivery to the treasurer for collection of taxes, they presented their complaint to the district attorney of the eighth judicial district with the request that he proceed, as required, by law to obtain relief for them, by presenting the matter to the district court for correction; that said district attorney refused to hear them, and being thus denied a hearing. their property was being taken without due process of law in violation of the constitutional provisions of both this state and the United States.

A denial that appellants' lands had been excessively valued, or that they were higher than other lands of like class, or that by such order grazing lands in Colfax county were valued higher than lands of the same class and kind in other counties, was interposed. A full hearing was had in which evidence was offered by all parties with regard to the value of the lands involved, as well as grazing lands in Colfax county as a whole. Upon such evidence the trial court made numerous findings of fact, among them being the following:

"That none of the plaintiffs above named were, under said order of said board of equalization, assessed as to their property disproportionately to other taxpayers, within the county and throughout the state, paying taxes upon property of like classes.

"That the value of the property involved in this action, as finally fixed under the order of said board of equalization, is not in excess of the true, actual, and cash value of said property, and that, under the levies made upon said valuations, none of the plaintiffs were and are required to pay taxes upon more than 33 1-3 per centum of the full, true, actual, and cash value of said property as of the 1st day of January, A. D. 1913."

This is supported by substantial evidence although there was an issue of fact with respect thereto. Under the declared law of this state, such finding will not be disturbed on appeal.

[1-4] Under the law in force during the year 1913 the state board of equalization was required to meet in regular session on the first Monday in July of each year, for the purpose of examining the assessment roll of each county within the state, to ascertain the rate of assessment and the valuation of property therein. It had the power to adjust and ,equalize each assessment rolls, so that the valuation of property throughout the state for taxation purpose should be of substantial uniformity. This power was derived from section 13, chapter 84, Laws 1913, which is in the following language:

"The state Board of Equalization shall at its said meeting on the first Monday in July, examine the assessment roll of each county of the state, for the purpose of ascertaining the rate of assessment and valuation of property therein, and the board shall have the power * * * to hear and determine any appeals taken as hereinbefore provided, and any other appeals from action of any county board, which may be taken by the state, or by any county, or by not less than ten tax payers of any county acting through a district attorney; and in case of any such appeal the appellant must file with the secretary of said board a complete transcript of the appealed case in time for consideration by said board at said meeting in July."

The contentions urged by the appellants in this case are very similar to those involved in and determined by this court in the case of South Spring Ranch & Cattle Co. et al. v. State Board of Equalization, 18 N. M. 531, 139 Pac. 159, wherein it was held that such board had the power to increase or decrease values of property without giving actual notice to the person or persons affected thereby; that the statute which fixed the time when such board should meet, and which gave it the power to so increase or decrease values constituted constructive notice to all concerned that such action might be taken. It is further held therein, however, that such constructive notice extended and applied only to legal or lawful action which might be taken, and did not apply or extend to any thing of an illegal or unlawful character which might be done, such as

raising the property of a taxpayer to a sum which exceeded its actual value, or increasing its value in such way as to amount to a discrimination against him. It was further held there that section 5475, Code 1915, which provides that when property, which has been rendered and valued by the local taxing officials at its full value, is thereafter increased by the state board of equalization without actual notice to the owner thereof, and thereby such owner is injured, he may present his complaint embracing such facts to the district attorney; that if such district attorney is satisfied that an injustice has been done it becomes his duty to present the matter to the district court for correction. This statute is as follows:

"The assessment book when delivered to the county treasurer, properly verified by the affidavit of the county assessor, and properly certified by the county commissioners as required by law shall constitute his authority to collect the taxes therein set forth, and he shall not be held liable for any irregularity or illegality in any of the proceedings prior to his receiving said assessment book; and the amounts to be paid as taxes as shown by said assessment book, shall not be altered, reduced or in any manner changed, except by direction of the district or Supreme Court; but this prohibition shall not extend to the correction of obvious clerical errors in names, descriptions of property or computation of amount of taxes. If 'the treasurer shall discover any errors of other kinds in said assessment book by which any injustice would be done to any taxpayer, it shall be his duty to report the same to the district attorney, and any taxpayer complaining of any such injustice may submit his complaint to the district attorney; and if the district attorney is satisfied that correction or change should be made so as to avoid injustice to the taxpayer, it shall be his duty to submit the matter to the district court and ask for an order of that court that such change or correction should be made without cost to the taxpayer injuriously affected."

It is further held in said case that the arbitary refusal of the district attorney to so act would amount to a legal fraud, which would enable the taxpayer to resort to a court of equity for relief. The court said:

"The section requires the taxpayer to submit any claim of injustice to the district attorney of the proper county, and

W. S. Land & C. Co. v. McBride, 28 N. M. 437

if the district attorney is satisfied that injustice has been done
to the taxpayer, it is his duty to submit the matter to the dis-
trict court and ask for an order correcting the injustice
without cost to the taxpayer. In this way relief is afforded
to each individual taxpayer, without any cost or expense to
him. If he can show that, by reason of the action taken by
the state board, he is compelled to pay taxes upon more than
one third of the actual value of his property, it is to be as-
sumed that the district attorney will promptly present the
matter to the district court and secure the relief to which the
taxpayer is entitled. It is true that the section provided
that the district attorney must be satisfied of the injustice
before he will be required to make application to the district
court. This provision may make the district attorney one
of the taxing officers of the state, and there seems to be
no appeal from his refusal to present the complaint of the
taxpayer to the district court. It does not follow, however,
that his judgment upon the matter is necessarily final. To
tax the citizen on more than one-third of the actual value
of his property is illegal under the taxing laws of this state.
If it is illegal, and the taxpayer resorts to all the means
provided by law to correct the injustice, it would seen that
the courts necessarily still remain open to him for redress.
The taxpayer who has been wronged by overvaluation of
his property, and who has had no notice of the action which
results in injury, and who has applied to the district attorney
for relief without avail, certainly has the right to relief in
the courts. If the taxpayer presents to the district attorney
substantial evidence of the injustice complained of, and the
district attorney refuses to act, his arbitrary refusal to sub-
mit the matter to the court would amount to legal fraud.
This would · bring the taxpayer clearly within the right to
equitable relief against the excessive portion of the tax."

This case was followed in the cases of Ute Creek
Ranch Co. et al. v. McBride, 20 N. M. 377, 150 Pac.
52, and State v. Superior Lumber & Mill Co., 23 N.
M. 606, 170 Pac. 58.

A careful examination of the· statute and these de-
cisions indubitably convinces us that the state board
of equalization had the authority to increase the value
of appellant's lands without giving them actual notice
thereof, so long as such increased value did not ex-
ceed the actual value of said lands, nor place them
comparatively higher than other lands, which would
constitute a discrimination. This could be done upon
the constructive notice given by the statute referred
to, which fixed the time when said meeting would

be held, and gave the authority to so increase the value of said land, under these limitations. In this connection, it is presumed that the state board of equalization did its duty in a lawful manner. The courts always presume that public officials have done their duty in conformity with law, and the burden rests upon him who asserts otherwise to prove the same.

Upon the refusal of the district attorney to institute a proceeding in the district court to correct the error complained of, the appellants resorted to a court of equity which gave them a full hearing, after which it found that the value fixed by the state board of equalization did not exceed the actual value of the lands in question; that they were not assessed higher than lands of like class and kind situated in other counties in the state, and that the appellants were not assessed at more than one-third of the actual value of said lands. By this finding it is shown that the complaint of the appellants, which they sought to have the district attorney hear, was not in fact well founded, and that their supposed grievance existed only in their fancy. The mere fact that the properties of appellants were increased in value by the board of equalization without actual knowledge on their part would not entitle them to restrain the collection of the added tax created thereby; neither would the mere fact that the district attorney declined to hear them entitle them to such relief. They must go beyond this and affirmatively show that the state board of equalization exceeded its legal authority by increasing the value of their property beyond its actual value, or that it so valued their lands as to constitute a discrimination against them. The very basis of the right to relief which appellants seek is that they have been injured by one or the other of these means. This they did not show, as is revealed by the finding of fact hereinbefore referred to.

In reaching this conclusion we are not unmindful of the later cases from this court, viz. First State Bank of Bernalillo v. State, 27 N. M. 78, 196 Pac. 743, Bond-Dillon Co. v. Matson, 27 N. M. 85, 196 Pac. 323, and State Tax Commission v. Dick et al., 28 N. M. 210, Pac. 392, in each of which it is held that overvaluation of property alone is not sufficient to grant equitable relief, where the owner of such property had notice of the valuation so fixed and had been given a hearing or an opportunity to be heard, before the taxing officials, after which his contention was by them denied. It is only where valuations have been increased by some taxing official without actual notice to the taxpayer to a sum which exceeds the actual value of the property, or against whom a discrimination has occurred, that he may resort to a court of equity. In this case the appellants having failed to show such injury, the trial court correctly denied the injunction, and the judgment will therefore be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.